## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                      Case Nos.:  5:17-cr-30-RH/MJF
                                                     5:19-cv-243-RH/MJF

BONNY HELEN WYERS

---

### REPORT AND RECOMMENDATION

This matter is before the court upon the "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" filed by Defendant Bonny Helen Wyers ("Wyers"). Doc. 58. The government filed a response including a sealed exhibit, Docs. 64, 65, and Wyers filed a reply, Doc. 67. After a review of the record and the arguments presented, the undersigned recommends that the section 2255 motion be denied without an evidentiary hearing.[1] *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

### I—Procedural Background

On December 12, 2017, a federal grand jury charged Wyers in two counts of a five-count superseding indictment. Doc. 18. Count One charged Wyers and co-

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).

defendant Susan Nell Anderson with conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) and 846, and Count Five charged Wyers with possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). Wyers was arrested on January 23, 2018, and at her video first appearance the following day, the court appointed CJA counsel Dustin Scott Stephenson to represent her. Docs. 28, 29, 33.

On March 6, 2018, Wyers pleaded guilty pursuant to a written plea agreement, statement of facts, and sealed supplement.[2] Docs. 36-38. As set forth in the plea agreement, Wyers faced a minimum term of ten years up to life imprisonment on Count One and a minimum term of five years' imprisonment on Count Five. Doc. 37 at 2; Doc. 62 at 9-10.

At Wyers's re-arraignment, the court explained her rights to her, including the rights she would be giving up by pleading guilty. Doc. 62 at 5-6. Wyers confirmed, under oath, that she understood that she would be waiving any defense she might have to the charges if she entered a guilty plea. *Id.* at 6. She also acknowledged that

---

[2] Anderson's case was transferred to the Southern District of Georgia where she entered a guilty plea, and on October 30, 2018, she was sentenced to 280 months in prison. *United States v. Anderson*, 2:18-cr-30-LGW-BWC.

everything in the statement of facts, Doc. 36, was true, Doc. 62 at 8, and she concurred that it was a "fair assessment" that part of the reason she had the gun was for it to be available if she needed it in connection with her drug-distribution activities, *id.* at 9.

Although the penalties Wyers faced on each count were clearly set forth in the plea agreement she signed, the court verbally reiterated the possible penalties and explained the limited circumstances under which it was authorized to sentence her below the mandatory minimum. *Id.* at 9-10. Without disclosing whether Wyers had agreed to cooperate, the court explained how cooperation could affect her sentence. It noted that if Wyers decided to cooperate, and the government decided that her assistance rose to the level of "substantial assistance in the investigation or prosecution of others," then the government could file a substantial assistance motion. *Id.* at 10. If this happened the court would no longer be bound by the mandatory minimum, although it could still sentence her up to life in prison. *Id.* The court emphasized that if the government decided not to file a substantial-assistance motion, regardless of the level of Wyers's assistance, she would have no recourse and she would be "stuck with" her decision to plead guilty unless there was an unconstitutional reason for the government's decision. Doc. 62 at 11. If the government filed the motion, it would be up to the court to decide whether to impose a lower sentence, but Wyers warned her that neither party could predict the court's

rulings on sentencing issues or the sentence Wyers would receive. *Id.* at 12-13. Wyers acknowledged no one had made any promises to her about the sentence that would be imposed in her case, and she understood that if she was displeased with her sentence she could appeal, but she would not be able to take back her guilty plea. *Id.* at 13, 14-15.

Wyers assured the court she had not talked with anyone from the government's side of the case about her sentence or what would happen if she entered a guilty plea, and she denied that anybody had threatened or pressured her into pleading guilty. *Id.* at 15. She said she had had sufficient time to talk to counsel about her case, he had answered all her questions, she was satisfied with the way he represented her, and she had no complaints at all. *Id.* The court accepted her plea, finding that Wyers, who has a bachelor's degree, entered the plea knowingly, voluntarily, and intelligently. Doc. 62 at 16.

The Probation Office prepared a Presentence Investigation Report ("PSR"). The final PSR held Wyers accountable for just over four kilograms of methamphetamine,[3] yielding a base offense level of 32. Doc. 48, PSR ¶ 39. After a three-level adjustment for acceptance of responsibility, her total offense level was

---

[3] Wyers was held accountable for the 33.4 grams of methamphetamine recovered during her interview with law enforcement on September 5, 2017, and the 4.02 kilograms of methamphetamine seized from co-defendant Anderson on September 4, 2017, that Wyers had transported. Doc. 48, PSR ¶¶ 32, 39.

29. PSR ¶ 48. Wyers had no criminal history, resulting in a criminal history category of I. PSR ¶ 53. The applicable advisory guidelines range based on these calculations was 87 to 108 months. PSR ¶ 113. Because of the mandatory minimum sentence on Count One, however, the guidelines term of imprisonment became 120 months, followed by the consecutive mandatory minimum 60-month term on Count Five, for a total of 180 months. *Id.*

At sentencing on July 12, 2018, the government agreed that a two-level minor-role reduction was appropriate, and defense counsel successfully argued for an additional two-level adjustment under U.S.S.G. § 2D1.1(a)(5). Doc. 63 at 3-4. These adjustments, which would have lowered Wyers's guidelines range to 57 to 71 months, had no practical effect due to the application of the mandatory minimum. Thus constrained, the court sentenced Wyers to 180 months' imprisonment. Docs. 52, 54. The court noted that if Wyers was convicted on unrelated pending state charges, *see* Doc. 48, PSR ¶ 55, the state judge would determine whether the federal and state sentences should be served consecutively or concurrently, Doc. 63 at 14.

Wyers did not appeal, but she timely filed the instant motion to vacate on July 10, 2019. Doc. 58 at 13. She separates her claims into four grounds for relief in her motion. There is some overlap, and some claims morph slightly between the original motion and her reply. Liberally construed, her claims are that (1) counsel was ineffective for failing to investigate and raise issues concerning Wyers's mental

competency at the time of her arrest and throughout the conspiracy due to her voluntary intoxication and mental-health issues; (2) counsel did not provide adequate representation in myriad respects because he was focused on his efforts to become a circuit judge; (3) 18 U.S.C. § 924(c)(1)(A) is void for vagueness, and there was no proof that Wyers used the firearm "in furtherance of" a drug-trafficking crime; and (4) counsel failed to secure the sentencing credit Wyers expected for the substantial assistance she provided to the government.

## II—Statement of Facts[4]

The investigation in this case commenced after several reliable sources informed FBI Task Force Officer ("TFO") Robert Picciotti that Susan Nell Anderson ("Anderson") and Defendant Wyers were involved in the distribution of a large amount of methamphetamine in Georgia and North Florida. TFO Picciotti obtained a search warrant authorizing him to affix a GPS device on Wyers's vehicle on August 30, 2017. At that time, Anderson was wanted on a federal warrant in the Southern District of Georgia for possession with intent to distribute methamphetamine. Based on law enforcement's review of jail phone calls, they

---

[4] The following information is summarized from the Statement of Facts for Guilty Plea, which is virtually identical to the description of the offense conduct in the final PSR. Docs. 36, 48.

learned that Anderson and Wyers were working with two inmates who used their sources to provide the women with methamphetamine.

Wyers was arrested in Georgia for possession of a stolen handgun on August 30, 2017, and was released from custody. In the following days, based on the GPS tracking device, law enforcement knew her to be in both the Tallahassee and the Panama City area, and they believed she was meeting with Anderson in Panama City based on their interception of jail phone calls.

On September 4, 2017, TFO Picciotti determined from the GPS tracker that Wyers had returned to Georgia. He went to Wyers's location and observed Wyers's husband Kevin Wyers, whose license was suspended, unlawfully driving the vehicle. A marked vehicle made a traffic stop at Picciotti's request, and Picciotti approached Kevin Wyers and told him that Picciotti had information indicating his involvement in the possession and distribution of methamphetamine. Kevin Wyers refused a request to search the vehicle.

Picciotti then questioned Defendant Wyers, again claiming to know about their involvement in the possession and distribution of methamphetamine. Wyers denied the accusation and falsely told Picciotti that she and her husband had not left the area. She also said that to the "best of her knowledge" there was nothing illegal in the vehicle, although a narcotics canine at the scene gave a positive alert on the car. TFO Picciotti asked Wyers to point out her personal belongings in the vehicle

before he entered it to search, and Wyers was reportedly visibly upset and nervous. After Picciotti *Mirandized* her, Wyers told him there was a firearm in the glove box and she had a methamphetamine pipe and oxycodone pills in her purse.

During the search, TFO Picciotti found a loaded firearm in the glove box, and a glass methamphetamine pipe in Wyers's purse. During the search, Picciotti also observed multiple incoming calls from Anderson coming through on Wyers's phone. He did not find any oxycodone pills, and when he asked Wyers whether she had the pills on her person, she denied it.

Wyers was escorted to the jail for a search. No contraband was found, and Wyers was placed into an interview room. When TFO Picciotti entered the room, he noticed a clear bag of blue pills lying a few inches from her feet. Wyers was reportedly "evasive" during the interview. Doc. 36 at 4. TFO Picciotti recovered the bag of pills and another bag containing methamphetamine from under the table. Wyers admitted the pills belonged to her, but she said the methamphetamine had been left by an individual who borrowed the vehicle as payment for its use. Picciotti left the room to field test the methamphetamine, which weighed 33 grams.

TFO Picciotti re-entered the interview room and (falsely) informed Wyers that the substance was negative for methamphetamine and that he was going to release her. She "seemed perplexed and left." *Id.* at 5.

On the same date, law enforcement located Anderson in a Panama City hotel. She gave officers verbal consent to search the room, where narcotics were observed in plain view. Anderson later made an "excited utterance indicating that there were 4 kilograms of methamphetamine and a large amount of cash ($25,000.00) under the bed." *Id.* She gave agents written consent to search the room, after which agents located the cash and methamphetamine, some of which was prepackaged in a manner consistent with distribution. They also recovered two loaded firearms. Anderson was taken into custody, and she admitted during an audio-recorded post-*Miranda* interview that she was a fugitive who intentionally was evading authorities, that she had armed herself to avoid being robbed, and that the methamphetamine found in the hotel room had been delivered by a female she refused to identify (later determined to be Wyers) and was destined to be distributed in the Orlando, Florida area.

Wyers was arrested the following day, on September 5, 2017. She gave a video-taped post-*Miranda* interview during which she admitted transporting the four kilograms of methamphetamine to Anderson from Georgia. Wyers explained that she received funds from Anderson in Panama City, on September 1, 2017, drove to Georgia, and returned the following day with the drugs. The PSR indicates that "Wyers stated during [her September 5, 2017] interview that the average amount of methamphetamine was 3-4 kilograms and the area delivered to was Tallahassee and

Panama City, Florida and communities throughout Georgia." Doc. 48, PSR ¶ 29. Wyers also revealed that Anderson provided her with at least two guns to protect her during her drug-trafficking runs. Wyers's statement to law enforcement strongly suggests that she had participated in more than one drug-trafficking run, something she corroborates in her affidavit in support of her section 2255 motion. Doc. 67 at 24. Nonetheless, she was held accountable only for the actual methamphetamine recovered from her person and from Anderson's hotel room.

### III—Legal Standard

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited. "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent." With respect to sentencing, a prisoner is entitled to relief under

section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) otherwise is subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

A district court need not reconsider issues raised in a section 2255 motion that already were resolved on direct appeal. *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("[I]dentical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects . . . .") (citations omitted).

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues that could have been raised on direct appeal generally are not actionable in a section 2255 motion and are procedurally barred. *Lynn*, 365 F.3d at 1234-35; *see Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*,

Page 11 of 37

365 F.3d at 1232 n.14. Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Id.* at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims generally are properly raised by a section 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012). To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). *Strickland*'s two-part test also applies to counsel's assistance in pleading guilty. *Lafler v. Cooper*, 566 U.S. 156, 162-63

(2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). A defendant must show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial. *Id.* at 163 (quoting *Hill*, 474 U.S. at 59).

In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315-16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

Page 13 of 37

Furthermore, Counsel's performance must be evaluated without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*, 466 U.S. at 693). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). In the case of alleged sentencing errors, a defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding

would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04 (2001).

To establish ineffective assistance, a defendant must provide factual support for her contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333-34 (11th Cir. 2012); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991). Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim. *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Att'y Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008)). This is true regardless of whether the issue is a trial or sentencing issue. *See, e.g.*, *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (holding that counsel was not ineffective for failing to preserve or argue a meritless issue).

A defendant bears a heavy burden to prove a constitutional violation of her right to counsel. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Eleventh Circuit has recognized that given this standard, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313.

While an evidentiary hearing may sometimes be required, not every claim of ineffective assistance of counsel warrants a hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon*, 518 F.3d at 1301. To be entitled to a hearing, a defendant must allege facts that, if true, would prove she is entitled to relief. *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). A

hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop−Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Accordingly, conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

## IV—Analysis

As noted above, Wyers's claims are not neatly packaged and they contain significant overlap. The undersigned has grouped her claims into the most logical manner possible, considering arguments in support of each claim regardless of where they appear in her memorandum or reply.

### A.   GROUND ONE—FAILURE TO INVESTIGATE MENTAL COMPETENCY

Wyers claims her attorney was ineffective for failing to investigate and raise issues concerning her mental competency at the time of her arrest and throughout the conspiracy due to her voluntary intoxication and mental-health issues. Her argument contains multiple subparts.

In her original motion, Wyers asserts that the *Mirandized* statements she gave after the September 4, 2017 traffic stop should not have been used against her because she was voluntarily intoxicated and thus not competent to understand or

waive her rights. Doc. 58 at 4. As proof of this, she notes that after her arrest on September 5, 2017, she was sent to "detox" in the jail for six days.

The government maintains that there is nothing of record to support Wyers's claim or suggest she ever raised the competency issue with her attorney. It further claims that the issue has been waived by Wyers's guilty plea.

In her reply, Wyers asserts that she has unsuccessfully attempted to secure jail records proving that she had been placed in the jail's infirmary for detoxing after her arrest. Doc. 67 at 3. Although she takes great pains to detail treatment she allegedly received, what happened after her arrest is not dispositive of her competency at the time of her arrest or in the months leading up to it. Wyers claims she told counsel she had a history of depression and anxiety, as well as drug use, suggesting that this placed him on notice of a duty to investigate, but there is no record evidence of any suggestion of incompetency.[5]

As Wyers was advised at her plea colloquy, entering an unconditional knowing and voluntary guilty plea waives her right to any defense she might have had to the charges. Doc. 62 at 6; *see United States v. Julius*, 776 F. App'x 646, 647 (11th Cir. 2019) (first citing *United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir.

---

[5] She also complains in her reply that the court asked her about her psychological problems but "failed to do a follow-up with an examination by a psychological expert." Doc. 67 at 12. The court's questions to Wyers and her counsel and their respective responses did not reveal any reason for such an examination.

2003); then citing *United States v. Brown,* 752 F.3d 1344, 1347 (11th Cir. 2014));
*United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008) ("A defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.") (quoting *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992)). Her counsel assured the court that they had been able to fully consult about her case with no communication issues whatsoever. Doc. 62 at 4. Based in part on counsel's representation, the district court found her plea had been entered knowingly, voluntarily, and intelligently. *Id.* at 16.

Wyers now asserts her plea was not voluntary because she entered the plea "without knowledge of the consequences nor was she advised about the consequences." Doc. 67 at 7. This assertion is squarely contradicted by the court's plea colloquy during which Wyers stated under oath that she understood the penalties she faced and the limited instances in which the court might impose a sentence less than the mandatory minimum. Doc. 62 at 9-13. Furthermore, the nature of her responses suggests that she was not merely providing rote answers to the court. Wyers has submitted nothing tending to show that the court's conclusion about the voluntariness of her plea should be disturbed. Thus, she has waived her claim that she had a defense to the charges that counsel should have investigated.

Even if the court were to consider the merits of Wyers's claim that her voluntary intoxication rendered her waiver of her Fifth-Amendment rights invalid, she has not met her burden of proof and she would not be entitled to relief. Wyers does not dispute that she was advised of her *Miranda* rights. The question is whether her waiver was "voluntary, knowing, and intelligent." Resolution of this question involves a two-part inquiry. *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). First, the waiver must have been "the product of a free and deliberate choice, rather than intimidation, coercion or deception." *Id.* Next, the defendant must have had a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.* "Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." *Coleman v. Singletary,* 30 F.3d 1420, 1426 (11th Cir. 1994) (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)); *United States v. Reynolds*, 367 F.3d 294 (5th Cir. 2004) (rejecting defendant's contention that his confession was involuntary because he had taken methamphetamine an hour before his arrest and had not slept for three days).

Wyers does not contend that she was subject to any form of coercion from law enforcement, but rather that due to her voluntary intoxication, she was incapable of mustering the requisite level of comprehension to understand that she was waiving

important rights. *See Barbour*, 70 F.3d at 585. She claims, in a conclusory fashion, that "trained Agents would have been quite aware that [she] was intoxicated and not mentally competent to knowingly give up her rights," Doc. 67 at 5, although she never suggests what behaviors she was exhibiting that might have signaled her alleged "incompetence." In fact, the record suggests just the opposite. On the date of the traffic stop, she was cognizant enough of the ramifications of being stopped by law enforcement that she was reportedly nervous; she lied to law enforcement about not having left the area, when two days earlier she had been to Florida to deliver four kilograms of methamphetamine; and she successfully concealed contraband on her person before dropping it on the floor in the interview room. Furthermore, the undersigned notes that this is not a situation where an alleged constitutional violation occurred behind closed doors and without witnesses. The PSR reflects that Wyers's September 5, 2017 post-arrest, post-*Miranda* interview was video-taped.

Wyers also claims in her reply that her voluntary intoxication "rendered her not criminally responsible" for her participation in the conspiracy. *Id.* at 6. She has not shown that this defense was factually or legally available to her. Wyers's assertion that her drug addiction or use of drugs on a single occasion absolves her from criminal responsibility might carry more weight if she had been accused of a single unlawful act, rather than participation in an ongoing conspiracy. Even the

single delivery for which she was held accountable took place over a span of two days, requiring her to pick up money from Anderson in Florida, drive to Georgia, and return the following day with drugs.

The voluntary use of drugs or alcohol is insufficient to support an insanity defense under 18 U.S.C. § 17. *See United States v. Knott*, 894 F.2d 1119, 1121-22 (9th Cir. 1990); *United States v. Garcia*, 94 F.3d 57, 61-62 (2d Cir. 1996). Voluntary intoxication can be used as a defense to specific-intent crimes.[6] *Cf. United States v. Carlisle*, 173 F. App'x 796, 800 (11th Cir. 2006) ("'Voluntary intoxication cannot negate a general intent crime' or a crime where no specific intent is required.") (quoting *United States v. Costello*, 760 F.2d 1123, 1128 (11th Cir. 1985)); *United States v. Ettinger*, 344 F.3d 1149, 1152 (11th Cir. 2003) (noting that defendant had a right to introduce psychological evidence to negate mens rea element of a specific-intent crime); *see also United States v. Dyke*, 718 F.3d 1282 (10th Cir. 2013) (noting that voluntary intoxication can be used as a mens rea defense to specific-intent crimes). To secure a conviction for a conspiracy to distribute drugs, the government must prove a "deliberate, knowing and specific intent to join the conspiracy." *United*

---

[6] Carrying or using a firearm during in and relation to a drug-trafficking offense is not a specific-intent crime. *See United States v. Jones*, 847 F. App'x 321, 324 (6th Cir. 2021) (noting that a voluntary-intoxication defense did not apply to violation of 18 U.S.C. § 922(g), a general-intent crime, as the defense applies only to specific-intent crimes); *United States v. Brown*, 915 F.2d 219, 224-25 (6th Cir. 1990); *United States v. Villafane-Jimenez*, 410 F.3d 74, 84 (1st Cir. 2005).

*States v. Revel*, 971 F.2d 656, 658 (11th Cir. 1992). The language of the indictment charges conspiracy to possess with *intent* to distribute. Doc. 18. But a "specific intent to distribute drugs oneself is not required to secure a conviction for participating in a drug-trafficking conspiracy." *Ocasio v. United States*, 578 U.S. 282, 288 (2016). If agreeing to store drugs at one's house in support of the conspiracy is sufficient proof of membership in the conspiracy as in *Ocasio*, undoubtedly the same could be said of Wyers's delivery of four kilograms of methamphetamine to a co-conspirator. *See id.*

Nonetheless, the facts of this case simply do not lend themselves to a viable voluntary-intoxication defense to the conspiracy charge. Wyers's alleged intoxication at the time of her arrest is not dispositive of whether, at some previous point in time, her level of intoxication prevented her from forming the requisite intent to participate in the drug conspiracy. Additionally, even if she had been heavily using drugs, Wyers would be required to show that she was intoxicated to the degree that she was unable to form the intent necessary to commit a crime over the entire two-day time period during which she drove to Florida to pick up cash from Anderson, returned to Georgia to purchase the methamphetamine, and then drove back to Florida with the four-kilogram delivery for Anderson. *See United States v. Caballero*, 492 F. App'x 726, 728 (9th Cir. 2012) (holding that a district court did not err in denying jury instruction on voluntary-intoxication defense, where

defendant offered no evidence that the alcohol he consumed on the day of a drug sale interfered with his capacity to form specific intent at the time of the crime); *cf. United States v. Knott*, 894 F.2d 1119 (9th Cir. 1990) ("[V]oluntary use of alcohol or drugs, even if they render the Defendant unable to appreciate the nature and quality of his acts, does not constitute insanity."). Finally, Wyers's behavior during the September 4 traffic stop and interview with law enforcement offers persuasive evidence that she understood the nature, quality, and wrongfulness of her actions, despite her alleged intoxication. *See United States v. Fisher*, 278 F. App'x 810, 813 (10th Cir. 2008) (finding defendant's pre-arrest actions, including flight and attempting to avoid arrest, established that he was not "unable to appreciate the nature and quality or the wrongfulness of his acts")

Wyers has not shown either that counsel's performance was constitutionally deficient in this respect or that she was prejudiced. Thus, she is not entitled to relief.

**B.    GROUND TWO—INADEQUATE REPRESENTATION, GENERALLY**

Wyers claims that counsel's performance was constitutionally deficient because he was more concerned about becoming a circuit judge than investigating her case and thus he hurried this case to its conclusion. She attacks counsel's performance in a shotgun fashion raising numerous issues with Stephenson's representation, none of which, whether considered individually or cumulatively, rise to the level of a constitutional violation under *Strickland* and its progeny.

Page 24 of 37

Wyers states that counsel should have "requested all statements of Petitioner be disallowed" and objected to the legality of such evidence. Doc. 59 at 5. Again, in light of Wyers's voluntary guilty plea, she has waived any right to raise these pre-plea issues. *De La Garza*, 516 F.3d at 1271; *Wilson*, 962 F.2d at 997. Her claim that Stephenson should have requested an expert witness to testify at sentencing regarding "the mental competency of an individual during the time of being on drugs and during withdrawal," even if admissible, would not have affected her sentence, in light of the applicable mandatory minimum.

Wyers complains that counsel never introduced the *McNabb* rule, the rule of lenity, or mens rea in her behalf. None of these principles have any application to her case, and counsel was not constitutionally ineffective for failing to raise meritless issues. *Denson*, 804 F.3d at 1342.

The *McNabb* rule[7] provides that a confession is inadmissible if made during an illegal detention due to failure to carry promptly a prisoner before a committing magistrate. *See Upshaw v. United States*, 335 U.S. 410, 413 (1948); *Rademacher v. United States*, 285 F.2d 100, 101 (5th Cir. 1960); *United States v. Harris*, No. 8:12-cr-205-T-17MAP, 2016 WL 11469176, at *6 (M.D. Fla. Apr. 7, 2016). Wyers was

---

[7] *McNabb v. United States*, 318 U.S. 332 (1943).

not detained during her September 4, 2017 interview with law enforcement after the traffic stop, and the rule has no application in her case.

As to the rule of lenity, Wyers contends this principle should have been introduced at sentencing because she was merely a "mule" who had been involved in criminal activity for only six months as a means of supplying her own drug habit. Doc. 59 at 6. Wyers misapprehends the meaning of the rule. "The rule of lenity is a canon of statutory construction that requires courts to construe ambiguous criminal statutes narrowly in favor of the accused." *See United States v. Wright*, 607 F.3d 708, 716 (11th Cir. 2010) (Pryor, J. concurring) (citing *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820)). It applies "only when, after consulting traditional canons of statutory construction, [a court is] left with an ambiguous statute." *Shular v. United States*, 140 S. Ct. 779, 787 (2020) (quoting *United States v. Shabani*, 513 U.S. 10, 17 (1994)). It also applies to ambiguous provisions of the Sentencing Guidelines. *See Wright*, 607 F.3d at 718 (Pryor, J., concurring). Wyers's argument seems to imply a belief that the rule is meant to afford *leniency* to deserving defendants.

Wyers also argues counsel was constitutionally ineffective because he did not present "a defense of mens rea," and she asserts there is a substantial chance that she would not have pleaded guilty had he done so. Doc. 59 at 6. Her argument fails. As has been noted more than once, she was advised during her re-arraignment that by

pleading guilty she waived any defense she had. Doc. 62 at 6. Additionally, her statement that the court could have considered mens rea during her sentencing and sentenced her to less than the fifteen-year term she received ignores the fact that the court was constrained by the mandatory minimum sentence. Indeed, Wyers herself acknowledged this at sentencing. Doc. 63 at 6.[8]

Wyers complains that counsel never made any objections during the sentencing hearing "nor asked that charges be dropped as she was a mere courier." Doc. 59 at 6. As explained above, absent the government filing a substantial-assistance motion, the court was restricted by the mandatory minimum sentences and could not impose a lower sentence.[9] Thus, she cannot establish prejudice. Her

---

[8] Wyers now suggests she was confused by the following statements the court made at her re-arraignment, that appear to contradict its previous statements about the application of the mandatory minimum:

> THE COURT: I told you I'll consider the guideline range. I'll also consider other things. I can impose a sentence that is within the guideline range; I also can impose a lower sentence or a higher sentence, anything up to the maximum I told you about. Do you understand?

Doc. 62 at 13; Doc. 67 at 12. She responded that she understood and did not ask for additional clarification. Doc. 62 at 13. Wyers now claims she understood this to mean she could qualify for a sentence below the mandatory minimum even without substantial assistance, Doc. 67 at 12-13, despite her statement during her allocution at sentencing that she understood the mandatory minimum, Doc. 63 at 6.

[9] Wyers asks, perhaps rhetorically, in her reply, what was the point of Stephenson arguing for a four-level reduction in her guidelines level when it changed nothing in

suggestion that counsel should have requested that the charges be dropped because she was a mere courier is a frivolous argument. Couriers are not blameless. Rather, they are essential participants in a conspiracy whose sentences are fashioned to reflect their roles. *See, e.g.*, *United States v. Perry*, 14 F.4th 1253, 1278 (11th Cir. 2021) (noting the fact that defendant is "merely a courier" is "not dispositive in decididing whether he is entitled to a downward adjustment").

Wyers complains that counsel did not file an appeal for her and told her there was no reason to file an appeal. Doc. 59 at 7. She claims that she lost the opportunity to appeal her case due to the advice of an attorney who was in a hurry to conclude his last case and close his law practice. Wyers makes the conclusory statement that Stephenson's advice not to appeal the mandatory minimum sentence was erroneous. She never asserts in her original motion, however, that she asked him to appeal, and she acknowledges having received a letter from him memorializing her decision not to appeal. *Id.* at 7, 16.

Wyers asserts that counsel's failure to object to her 180-month sentence as unreasonable was deficient. *Id.* at 8. She appears to contend that such an objection

---

her sentencing. *See* Doc. 67 at 14; Doc. 63 at 3-4. Wyers is correct that this reduction made no difference in her sentence as her case unfolded. But had she been able to secure a substantial-assistance motion, even after sentencing, the reduction could have made a very significant difference, as her sentence would have been imposed based on the Sentencing Guidelines alone, without the constraint of the mandatory minimum.

would have yielded either a more favorable sentence or a more lenient standard of appellate review based on the "parsimony principle." *Id.* This principle instructs courts to impose a sentence sufficient but not greater than necessary to comply with the factors enumerated in 18 U.S.C. § 3553(a). *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017). Fatal to Wyers's claim, however, is the fact that the parsimony principle does not allow a court to disregard mandatory minimum sentences. In fact, only subsections (e) and (f) of section 3553 address and permit a sentencing judge to reject a mandatory minimum sentence in certain limited circumstances. The parsimony principle would not have aided Wyers in her appeal under the circumstances of this case. Wyers's contention in her reply that the court "erred" in concluding that it could not vary from the mandatory minimum sentence under the circumstances of this case is mistaken. Doc. 67 at 13.

Wyers asserts for the first time in her reply that she was "shocked at her sentencing" and she told counsel that she wanted to appeal. *Id.* at 7, 8, 24. She also concedes, however, that counsel advised her against filing an appeal and, importantly, that "she accepted" this advice, although she now claims the advice was "erroneous." *Id.* at 8. Counsel's understanding that Wyers did not want to appeal is documented in his letter to Wyers dated September 27, 2018. Doc. 59 at 16. She correctly asserts that counsel could have filed a brief pursuant to *Anders v. State of California*, 386 U.S. 738, 744 (1967). Because Wyers admittedly accepted counsel's

advice about not filing an appeal, however, counsel was not constitutionally ineffective for failing to do so. The undersigned also notes that filing an appeal generally is seen as inconsistent with cooperation. Considering that Wyers was still hoping to secure a Rule 35 motion, which could have led to a significant sentence reduction, as well as the apparent lack of viable appellate issues, the undersigned cannot say that counsel's advice with respect to an appeal was constitutionally deficient.

Wyers also complains that because her attorney was "preoccupied by the possibility of becoming appointed [sic] a circuit judge, he only me with Wyers for three hours during the time period of January thru [sic] July 12, 2018." Doc. 67 at 11. Wyers has not shown a violation of *Strickland*. At her re-arraignment, Wyers told the court, under oath, that she had had as much time as she would like to talk about her case with counsel, Doc. 62 at 15, and she does not suggest how additional meetings would have changed the outcome of her case.

Wyers contends that counsel "coerced" or "convinced" her into entering a guilty plea by telling her that pleading guilty and cooperating was her only chance to receive a sentence less than thirty years. Doc. 67 at 11. Counsel's advice about the benefits of cooperation and a possible sentence reduction was not erroneous. Although Wyers does not mention her co-defendant, in light of Anderson's eventual guilty plea, she likely would have testified against Wyers at trial. Such testimony,

Page 30 of 37

combined with Wyers's admissions to law enforcement and other evidence against her, would have presented a formidable barrier to acquittal at trial. The record does not support Wyers's assertion that she had a "mental incompetence defense," and her conclusory assertion that she would have proceeded to trial if she had been advised of such a defense carries little weight. *Id.* at 15

In sum, Wyers has not shown that counsel was constitutionally ineffective, and she is not entitled to relief on Ground Two.

## C.   GROUND THREE—FAILURE TO MOVE TO DISMISS COUNT FIVE

Wyers contends that 18 U.S.C. § 924(c)(1)(A)(i) is unconstitutional and void for vagueness, and that counsel was constitutionally ineffective for failing to present evidence to dismiss Count Five. Doc. 59 at 10; Doc. 67 at 3. She contends that she had a Second-Amendment right to possess a gun in the glovebox of her vehicle and because no drugs were found at the time, the gun was not used "in furtherance of" any crime.

Title 18 U.S.C. § 924(c)(1) provides additional penalties for use or carrying a firearm during and in relation to any crime of violence or drug-trafficking crime. Wyers's argument that the definition of "crime of violence" is void for vagueness has no bearing on this case, as she was indicted for drug trafficking, not any activity associated with a crime of violence. Additionally, her admission that co-defendant Anderson provided her with two guns to protect her during her drug-trafficking runs

provides the necessary proof that the relationship between the guns was not merely accident or coincidence. The quantity of drugs she transported further supports this conclusion. *See United States v. Gibbs*, 753 F. App'x 771, 776 (11th Cir. 2018) (finding that defendant's possession of $40 or $50 in drugs did not "lend itself to a strong inference that [defendant] required the gun to protect his supply).

The invalidation of section 924(c)'s residual clause had no effect on the provision penalizing firearm possession during and in relation to drug-trafficking crimes, and relief on this ground should be denied.

## D.   GROUND FOUR—FAILURE TO SECURE SUBSTANTIAL ASSISTANCE[10]

Wyers claims that she was led to believe that her assistance would significantly reduce her sentence, and she complains that counsel did not ask the government to recognize the substantial assistance she had given. Doc. 59 at 7, 13. Wyers has shown neither deficient performance nor prejudice as to either portion of her claim.

Wyers states that her assistance has led to at least one federal indictment. She states in her reply both that "Stephenson had informed her that substantial assistance would probably mean a sentence of six to eight years" and that Stephenson assured her that "she would receive a sentence of about five to six years." Doc. 67 at 7. In

---

[10] The discussion in this section addresses arguments that Wyers makes in both Grounds Two and Four of her motion.

either event, she believed her sentence would be minimal, as compared to "the possibilities." *Id.* This belief is not equivalent to a promise or guarantee. Furthermore, her suggestion that counsel promised her a certain sentence contradicts her sworn statements at her re-arraignment.

During her plea colloquy, Wyers assured the court she had talked with counsel about what substantial assistance meant and how the system worked. Doc. 62 at 11. The court specifically explained it was up to the government to decide whether any assistance she provided had risen to the level of "substantial assistance." If the government decided it was not substantial, or the government decided not to file a substantial-assistance motion, Wyers would be "stuck with that decision." *Id.* Wyers assented her understanding. The court listed some of the myriad factors it would consider in fashioning her sentence. It also warned her that the counsel could not predict the court's rulings, and if counsel's estimate about the guidelines range was incorrect, that would not provide a legal basis for Wyers to withdraw her plea. *Id.* at 12-13. She also denied that anyone had promised what the sentence would be in the case. *Id.* at 13.

A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977); *Winthrop-Redin*, 767 F.3d at 1216. This is because solemn declarations made under

oath in open court carry a strong presumption of verity. *Blackledge*, 431 U.S. at 73-74; *Winthrop-Redin,* 767 F.3d at 1216. They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice. *Blackledge*, 431 U.S. at 73-74; *Winthrop-Redin*, 767 F.3d at 1216. In fact, such allegations are subject to summary dismissal. *Winthrop-Redin*, 767 F.3d at 1216 (citing *Blackledge*, 431 U.S. at 74). A defendant "bears a heavy burden to show his statements [under oath] were false." *Id.* at 1217 (quoting *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)). Wyers has not shown why her declarations under oath in open court should be disregarded in favor of the contradictory allegations she now makes that she was promised a certain sentence.

The next portion of Wyers's argument concerns counsel's alleged failure to secure her a substantial-assistance motion.

The decision to file a section 5K1.1 motion is a matter of prosecutorial discretion. *United States v. Rothstein*, 939 F.3d 1286, 1292 (11th Cir. 2019); *United States v. Nealy*, 232 F.3d 825, 831 (11th Cir. 2000); *United States v. Forney*, 9 F.3d 1492, 1501 (11th Cir. 1993). The government has the power, not a duty, to file such a motion when a defendant has substantially assisted. *Wade v. United States*, 504 U.S. 181, 185 (1992). Even plea agreements that require the government to consider whether the aid to the prosecution constitutes substantial assistance do not create a

contractual duty to file a section 5K1.1 motion. *Forney*, 9 F.3d at 1499-1500. Judicial review of a decision not to file a substantial-assistance motion is appropriate only where there is an allegation and substantial showing that the prosecution refused to file the motion because of a constitutionally impermissible motivation, such as race or religion. *Wade*, 504 U.S. at 185-86. Wyers has made no such allegations in this case. The government's sealed exhibit, containing communication between Stephenson and AUSA Ahmed reflects that counsel was diligent in his attempts to secure his client a substantial-assistance motion so that she could avoid the mandatory minimum sentence. Doc. 65-1.

In making his argument to the court at sentencing, counsel brought Wyers's attempts at cooperation to the court's attention, noting that she had "made tremendous efforts in that regard" although it had "not borne any fruit as of yet." Doc. 63 at 5. Counsel also advised the court that it was still possible that Wyers could benefit from a Rule 35 motion, *id.*, although this ultimately did not come to pass.[11] Even if, as Wyers alleges, one individual was indicted at least in part due to information she provided, counsel did not have any recourse to "force" the

---

[11] The government advised the court at sentencing that Wyers had been honest and truthful during her debriefings, but that neither co-defendant had met or could identify the supplier, so cooperation in this respect was "very difficult." Doc. 63 at 7. It also assured the court that if any information from Wyers led to a search warrant or arrest, it would submit a Rule 35 motion. *Id.*

government to file the substantial-assistance motion. Thus, she is not entitled to relief.

## V—Conclusion

Based on the foregoing discussion and analysis, the undersigned concludes that Wyers has not shown that any of the claims raised in her section 2255 motion have merit. She also has not demonstrated the necessity for an evidentiary hearing. Therefore, Wyers's section 2255 motion should be denied in its entirety.

## VI—Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2255 Cases. Wyers has not shown that she was denied a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Thus, a certificate of appealability is not warranted.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should

issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the District Court in the objections permitted to this report and recommendation.

## VII—Recommendation

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    Defendant Wyers's motion to vacate, set aside, or correct sentence, Doc. 58, be **DENIED**.

2.    A certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>7th</u> day of February, 2022.


/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**